IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM M. VALDEZ,

      Plaintiff,

v.                                                                          NO. CIV.  08-cv-00992-RB-DJS

ERIC H. HOLDER, JR., Attorney General,
and the DEPARTMENT OF JUSTICE,

      Defendant.

<u>MEMORANDUM  OPINION AND ORDER</u>

     This matter came before the Court on Defendant's Motion to Dismiss and/or for Summary Judgment. (Doc. 33.) Having reviewed the parties' arguments and considered the pleadings, affidavits, depositions, answers to interrogatories, and other documents submitted by the parties, the Court hereby GRANTS Defendant's Motion for Summary Judgment.

**I.      INTRODUCTION AND PROCEDURAL BACKGROUND**

     This suit arose out of Plaintiff William M. Valdez' removal as a Drug Enforcement Administration Basic Agent Trainee for reasons of medical inability in May 2005.  Plaintiff brought this suit under the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., and Section 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, as amended by the Civil Rights Act of 1991, alleging three counts of discrimination based on disability, gender, and national origin.  Plaintiff filed a complaint with the U.S. District Court on October 24, 2008.  Defendant filed a Motion to Dismiss and/or for Summary Judgment (Doc. 33) on January 4, 2010.  Plaintiff filed a Response (Doc. 35) on January 21, 2010, and Defendant filed a Reply (Doc. 39) on February 10, 2010.

## II.      STATEMENT OF FACTS

On October 27, 2003, Plaintiff William M. Valdez was informed by letter (Doc. 33-3) that he had been selected for the position of Special Agent with the Drug Enforcement Administration (DEA).  The letter also informed Plaintiff that he was required to attend an agent training academy and would have to pass a Physical Task Test (PTT) during the first week of training.  During the shuttle run portion of the PTT on November 18, 2003, Plaintiff allegedly suffered an injury to the meniscus of his left knee and as result failed the PTT.  The shuttle run required male trainees to obtain a time of twenty-six seconds and female trainees to obtain a time of twenty-nine seconds. Plaintiff attempted to pass the PTT a second time on November 21, 2003, but was again unsuccessful.

By a letter dated November 21, 2003 (Doc. 33-6), Plaintiff was informed of the DEA's Basic Agent Training recycle policy.  Plaintiff was advised that he would be recycled for a period of not more than thirty days, and that at the end of that period, he would be required to retake the PTT and obtain a score of fifteen (five points higher than he was required to score on the initial test).  If unable to successfully complete the PTT re-test within thirty days, Plaintiff was advised that the DEA would initiate separation proceedings.  Plaintiff was also provided with a copy of the Office of Training Divisional Order No. 35 (Doc. 33-5), which outlined the requirements for successful completion of the basic agent training program.

Plaintiff was later reclassified as a "medical recycle" (Doc. 33-8) by the DEA Health Services Unit and scheduled to undergo surgery on February 5, 2004.  As a medical recycle, Plaintiff was placed in the DEA's Albuquerque, New Mexico District Office where he was to receive light duty assignments while he continued to rehabilitate his knee and train for the PTT.  Plaintiff

expressed his desire to undergo the surgery and rehabilitation and to return to the training academy as soon as possible.

Basic Agent Trainee (BAT) Tasha Bradford, who had also failed the PTT due to a knee injury, was placed on medical recycle with Plaintiff.  Ms. Bradford was similarly informed that she would have to undergo knee surgery before returning to the training academy; however, she decided not to undergo the surgery and asked about the possibility of being transferred to a division that wouldn't require her to pass the PTT.  By memorandum dated February 24, 2004, Ms. Bradford informed the DEA of her intention not to undergo the surgery, that she understood this meant she could no longer participate in the training academy, and that she wished to continue on as part of the DEA family and would like to be advised of her options.  On April 6, 2004, Ms. Bradford submitted an application with the DEA for the position of Diversion Investigator.  On April 27, 2004, Ms. Bradford's termination was recommended based on "medical inability" and her decision not to undergo surgery, which made her "medically unable to meet the requirements for returning to the DEA Training Academy."  That same day, Ms. Bradford received a letter indicating that her termination had been recommended by the Acting Deputy Assistant Administrator for the DEA Human Resources Division.  On May 6, 2004, Ms. Bradford was offered employment with the DEA as a Diversion Investigator. (Doc. 33-23.)

Meanwhile, Plaintiff underwent knee surgery to repair his torn meniscus and continued to serve in the DEA's Albuquerque District Office and prepare to retake the PTT.  Plaintiff was released by his doctor to return to work on February 22, 2005 and retake the PTT. (Allen Dep. 24:18–25:2; Doc. 33-9; Doc.  33-12.)  Plaintiff was then medically cleared by the DEA to retake the PTT on March 16, 2005. (Doc. 33-13.)  Despite the approval of his doctor and the DEA to retake the PTT, Plaintiff refused to do so on April 1, 2005, stating that he feared further injury to his knee.

(Doc. 33-14.)  On April 11, 2005, the DEA sent Plaintiff a letter proposing his removal as a BAT for reasons of medical inability—citing his refusal to retake the PTT after having been medically cleared to do so—and informing him of his right to reply to the proposed termination. (Doc. 33-14.) Plaintiff received a final termination letter on May 17, 2005. (Doc. 33-15.)

On June 8, 2005, Plaintiff contacted an Equal Employment Opportunity (EEO) Counselor, alleging that he had been discriminated against by the DEA, and on August 15, 2005, he filed a formal complaint with the Equal Employment Opportunity Commission (EEOC). (Doc. 33-16.) Plaintiff filed a complaint with the United States District Court for the District of New Mexico on October 24, 2008 alleging one count of discrimination based on disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., one count of discrimination based on gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, as amended by the Civil Rights Act of 1991, and one count of discrimination based on national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, as amended by the Civil Rights Act of 1991.

## III.   STANDARD OF REVIEW

Defendant's Motion to Dismiss and/or for Summary Judgment requests that this Court dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 56.  In the case at hand, however, it would be inappropriate for the court to consider dismissal under Rule 12(b)(1). Defendant argues that dismissal of Plaintiff's claim of gender discrimination is appropriate under Rule 12(b)(1) because Plaintiff failed to exhaust his administrative remedies, and therefore, this Court lacks jurisdiction to hear Plaintiff's claim; however, the Tenth Circuit has clearly stated that "compliance with the forty-five day time limit in [29 C.F.R.] § 1614.105(a)(1) is not a jurisdictional requirement for filing a suit under Title VII." *Beene v. Delaney*, 70 Fed. Appx. 486, 490 (10th Cir.

4

2003) (citing *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324–26 (10th Cir. 2002)). The Court must therefore consider Defendant's motion under Rule 56.

Under Rule 56, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "A fact is 'material' if under the substantive law it could have an effect on the outcome of the lawsuit. An issue is 'genuine' if 'a rational jur[or] could find in favor of the nonmoving party on the evidence presented.'" *Adams v. Am. Guarantee and Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (quoting *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir.2000)). The trial court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party." *Simms v. Oklahoma ex rel. Dept's of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The movant (in this case, the Defendant) carries the initial burden of showing that no genuine issue of material fact exists. *Adams*, 233 F.3d at 1246; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant meets this initial burden, then the burden shifts to the non-moving party (Plaintiff) to find sufficient evidence that would warrant submission of the case to a trier of fact. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992). "Evidence is sufficient to withstand summary judgment if it is significantly probative and would enable a trier of fact to find in the nonmovant's favor." *Adams*, 233 F.3d at 1246.

5

IV.     ANALYSIS

A.     Rehabilitation Act Claim

In Count I, Plaintiff claims that "Defendant discriminated against [him] based on his disability" in violation of the Rehabilitation Act "when it failed to provide [him] reasonable accommodation of his disability and removed [him] from the federal service based solely on his disability." (Compl. ¶ 22.)  The Rehabilitation Act prohibits a federal employer, such as Defendant, from discriminating against an "otherwise qualified individual with a disability." 29 U.S.C. § 794(a). The Act provides for a private right of action for employees who have been subjected to discrimination by a federal employer. 29 U.S.C. § 794a.  To bring an action in federal court, however, a Plaintiff must first establish a prima facie case of discrimination:

> The four elements of a prima facie claim are (1) that the plaintiff is disabled under the Act; (2) that he would be 'otherwise qualified' to participate in the program; (3) that the program receives federal financial assistance (or is a federal agency); and (4) that the program has discriminated against the plaintiff.

*McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004).

The first element that Plaintiff must establish is that he is disabled within the meaning of the Rehabilitation Act.  To determine whether a person is disabled under the Act, the Court must look to the definition of "disabled" in the Americans with Disabilities Act of 1990 (ADA).  *Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007) ("[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under . . . the Americans with Disabilities Act of 1990" (quoting Section 504(d) of the Rehabilitation Act. 29 U.S.C. § 794(a))).  Under the ADA, the term "disability" means, an individual with one of the following:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or
(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); *see also* 29 C.F.R. §§ 1614.203(b) and 1630.2(g)(1)–(3).  The Supreme Court

has narrowly interpreted this definition,[1] requiring that the impairment must interfere with "[m]ajor

life activities . . . that are of central importance to daily life," such as "walking, seeing, and hearing."

*Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002), *superseded by statute*

Pub. L. No. 110-325, 122 Stat. 3553 (2008) (ADA Amendments Act of 2008); *see also* 45 C.F.R.

§ 84.3(j)(2)(ii) or 29 C.F.R. § 1630.2(i) ("*Major life activities* means functions such as caring for

one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and

working.").  "The impairment's impact must also be permanent or long term." *Toyota Motor Mfg.*

at 198 (citing 29 C.F.R. §§ 1630.2(j)(2)(ii)–(iii)).

        Defendant contends that Plaintiff has not presented sufficient facts through his pleadings and

depositions to establish that he is disabled within the meaning of the Rehabilitation Act; and

therefore, Plaintiff has failed to establish a prima facie case of discrimination.  Defendant first

argues that Plaintiff is not disabled because the knee injury was only temporary and not a chronic

condition.  Defendant notes that Plaintiff had returned to running by October 2004 and was sprinting

in January 2005 in preparation for the PTT in April 2005. (Allen Dep. 22:13–20, 25:15–21.)

Plaintiff asserts, however, that his knee injury is a permanent condition and that, as of the date of

his discharge, May 17, 2005, it had already existed for a period of 18 months and had not yet

---

1. Congress, however, viewed the Supreme Court's interpretation of a "disability" within the context of the ADA as
overly restrictive and passed the ADA Amendments Act of 2008 to make it easier for plaintiffs to claim a disability.
Pub. L. No. 110-325, 122 Stat. 3553 (2008).  The effective date of this new legislation was January 1, 2009.  Since
Plaintiff's alleged injuries occurred prior to the effective date, this Court must apply the old interpretation of
"disability." *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 (1994) ("Even when Congress intends to
supersede a rule of law embodied in one of our decisions with what it views as a better rule established in earlier
decisions, its intent to reach conduct preceding the 'corrective' amendment must clearly appear."); *EEOC v. Agro
Distribution, LLC*, 555 F.3d 462, 469 n. 8 (5th Cir. 2009).

resolved.  Therefore, Plaintiff argues that "[a]t a minimum, a question of fact remains with respect to the permanency of Plaintiff's medical condition." (Doc. 35, p. 10.)

On a motion for summary judgment, the movant (Defendant) carries the initial burden of showing no genuine issue of material fact. *Adams*, 233 F.3d at 1246; *Adler*, 144 F.3d at 670.  This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  If the movant meets this initial burden, then the burden shifts to the non-moving party (Plaintiff) to find sufficient evidence that would warrant submission of the case to a trier of fact.  *Wichita Coca-Cola Bottling Co.*, 968 F.2d at 1024.  "Evidence is sufficient to withstand summary judgment if it is significantly probative and would enable a trier of fact to find in the nonmovant's favor." *Adams*, 233 F.3d at 1246.

In its memorandum in support of its motion for summary, Defendant pointed to the testimony of Plaintiff's Doctor (Allen Dep. 16:6–17:4, 22:13–20, 25:15–21, 24:13–25:2, 26:16–27:24, 29:25–30:13) and Plaintiff (Valdez Dep. 177:24–178:12) indicating that Plaintiff's injury was temporary and that it did not limit a major life activity.  Thus, the burden clearly shifted to Plaintiff to present evidence indicating that there exists a genuine issue of material fact that would warrant submission of this case to a trier of fact.  Other than his claim that his knee injury has limited his ability to run and pass the PTT, Plaintiff has not shown that his knee injury has limited a major life activity.  As evidence of a genuine issue of material fact, Plaintiff cites to his own deposition statements indicating that he didn't believe he could have passed the PTT on April 19 or June 6, 2005, and that Plaintiff would not have taken the PTT even if he had been given additional time. (Valdez Dep. 217:4–6, 218:8–10, 222:13–224:19, 241:22–242:14, 243:3–5, 244:6–25.) Plaintiff argues that running is a major life activity, and that an average person with proper

8

conditioning can pass the PTT, essentially proposing the adoption of the PTT as the test for disability. This Court does not believe Congress intended such an expansive definition of disabled.

If the only impact of Plaintiff's knee injury on his major life activities is that it has limited his ability to run and pass the shuttle run portion of the PTT, his injury clearly does not qualify as a disability. *See Tompkins v. Mineral*, 302 Fed. Appx. 666, 667 (9th Cir. 2008) ("Because running is not an activity 'of central importance to daily life,' it is not a major life activity."); *Mackenzie v. City and County of Denver*, 414 F.3d 1266, 1275 (10th Cir. 2005) (finding that "strenuous physical activity" does not constitute a major life activity); *Black v. Roadway Express, Inc.*, 297 F.3d 445, 450 (6th Cir. 2002) (finding that activities such as walking, kneeling, stooping, jogging, lifting, sitting in confined, restricted positions, running, and climbing are not major life activities); *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir.1997) ("moderate difficulty or pain experienced while walking does not rise to the level of a disability"); *Piascyk v. City of New Haven*, 64 F. Supp. 2d 19, 26 (D.Conn.1999) ("running, jumping, climbing stairs and ladders, and crawling are not major life activities within the meaning of the ADA"); *Hennagir v. Utah Dept. of Corrections*, No. 2:05-CV-1043-DAK, 2008 WL 1808695, at *6 (D. Utah Apr. 21, 2008) ("Strenuous physical activity, however, is not a major life activity."); *Ruggles v. Keebler Co.*, 224 F. Supp. 2d 1295, 1301 (D. Kan. 2002) (finding that "crawling on the floor with grandchildren, trimming trees, and running" are not major life activities).

The only other major life activity potentially impacted by Plaintiff's knee injury is his ability to work, specifically, Plaintiff's ability to perform the duties of a Special Agent of the DEA. To qualify for Special Agent training, one must be able to meet certain physical qualifications; however, with respect to the major life activity of working, just because a person does not possess the physical qualifications to perform a specific job does not mean that the person is disabled. To be disabled,

9

a person must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3).  Not everyone is qualified to be a DEA agent or to perform physically demanding jobs.  Plaintiff appears qualified to perform a broad range of other jobs within law enforcement, or other professions; and therefore, he cannot claim that his major life activity of working has been substantially limited by his injury.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . ." *Celotex*, 477 U.S. at 323–24.  Plaintiff has failed to present sufficient evidence on a motion for summary judgment that he is disabled within the meaning of the ADA.  The Court must therefore grant Defendant's motion for summary judgment with regard to Count I of Plaintiff's complaint.

**B.    Gender Discrimination Claim**

In Count II, Plaintiff asserts that Defendant discriminated against him based on his gender in violation of the Civil Rights Act of 1964 by subjecting him to different job criteria than female BATs, by failing to transfer him to a different division of the DEA that would not require him to pass the PTT, and by terminating his employment with the DEA.  Section 717 of the Civil Rights Act of 1964 proscribes discrimination in federal employment, providing that "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a) (2006).

The Civil Rights Act "provides for a careful blend of administrative and judicial enforcement powers." *Brown v. General Servs. Admin.*, 425 U.S. 820, 833 (1976).  Under 42 U.S.C. § 2000e-

16(c), an aggrieved employee or applicant who believes he has been discriminated against may file a civil action with a district court; however, the employee must first "consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). The employee "must initiate contact with [the EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).  Failure to notify a Counselor within 45 days of the relevant event or action is grounds for dismissal of a claim by the district court. *See Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992) ("Failure to notify the EEO counselor in timely fashion may bar a claim, absent a defense of waiver, estoppel, or equitable tolling.").  Thus, before a federal employee complaining of discriminatory employment action under the Civil Rights Act can bring an action in federal court, the employee must first exhaust his or her administrative remedies. *See Brown*, 425 U.S. at 829–34; *Woodman v. Runyon*, 132 F.3d 1330, 1341 (10th Cir. 1997).

Defendant argues that Plaintiff failed to exhaust his administrative claims with regard to his claim that the PTT discriminates on the basis of gender because Plaintiff knew at the time he took the PTT that women were graded differently than men, yet he failed to contact an EEO Counselor within forty-five days of failing the test on November 18, 2003 and November 21, 2003.  Indeed, Plaintiff did not contact an EEO Counselor until June 8, 2005, more than one and a half years after he failed the PTT. (Doc. 33-16.)  Defendant further argues that Plaintiff's claim that he was treated less favorably than similarly situated DEA employee Tasha Bradford based on his gender should be dismissed for failure to exhaust his administrative remedies because Plaintiff failed to contact an EEO counselor within forty-five days of when Ms. Bradford sought and accepted a position as Diversion Investigator in May 2004.

Plaintiff asserts, however, that he complied with the forty-five day time limit to contact an

11

EEO Counselor and exhaust his administrative remedies when he filed administrative charges alleging discrimination on the basis of race, sex, and handicap on June 8, 2005, twenty-two days after his discharge from the DEA. Plaintiff argues that the date on which his claim arose—the date initiating the 45 day deadline—was the date of his discharge, May 17, 2005. Plaintiff insists that his claim could not have arisen before that date because Defendant was accommodating his knee injury by sending him to Albuquerque for light duty and affording him a second opportunity: "[a]ny complaint by Plaintiff in response to this action would have been legally insufficient, and required Plaintiff to be a fortune teller and an ingrate." (Doc. 35, p. 6–7.) Citing to *Sanchez v. Denver Public Schools*, 164 F.3d 527 (10th Cir. 1998), Plaintiff argues that Title VII requires an "adverse employment action" before a plaintiff can bring a claim.

Under *Sanchez*, "[t]he plaintiff . . . bears the initial burden of setting forth a prima facie case of discrimination." 164 F.3d at 531. To do so, "plaintiff must show: 1) [he] is a member of the class protected by the statute; 2) [he] suffered an adverse employment action; 3) [he] was qualified for the position at issue; and 4) [he] was treated less favorably than others not in the protected class." *Id*. at 531; *see also Thomas v. Denny's Inc.*, 111 F.3d 1506, 1510 (10th Cir. 1997) (race); *Cole v. Ruidoso Minicipal Sch.*, 43 F.3d 1373, 1380 (10th Cir. 1994) (gender). In *Sanchez*, the Tenth Circuit affirmed the district court's grant of summary judgment, finding that the plaintiff's transfer to another school was nothing more than "a mere inconvenience or alteration of job responsibilities," and therefore, "she failed to establish a prima facie case of discrimination." 164 F.3d at 532 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (finding that adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change

12

in benefits").  Plaintiff argues that he could not have brought an action for gender discrimination after having failed the PTT in November 2003 because he could not have shown an adverse employment action; and therefore, he was not required to contact an EEO Counselor at that time.

Defendant counters that a warning letter—such as the one Plaintiff received after failing the PTT—served as an adverse employment action because it affected "the likelihood that [] plaintiff [would] be terminated." *Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1137 (10th Cir. 2005).  Having failed the PTT twice, Plaintiff was advised that he was being dismissed from the special agent training academy, recycled to Albuquerque, and required to retake the PTT within thirty days and achieve a score of fifteen points, five points higher than required when Plaintiff first took the test.  Additionally, Plaintiff was advised that if he were "unable to successfully complete a standard PTT re-test within the 30-day time frame, DEA's Employee Relations Unit (HRER) [would] initiate separation proceedings within 30 days." (Doc. 33-6.)  While Plaintiff was not immediately terminated—in fact, he was given more than a year to recuperate from his injury and retake the test—the letter and his recycling to Albuquerque would seem to represent an adverse employment action as defined by the Tenth Circuit and the Supreme Court: he was unable to enter the basic agent training academy (failure to promote), reassigned to Albuquerque with different job responsibilities, and required to retake the PTT (affected likelihood of his termination).

The Court additionally notes that the purpose behind the forty-five day time limit to seek out an EEO Counselor is distinct from the requirements that the Tenth Circuit has established for setting forth a prima facie case of discrimination.  "The twofold purpose of the exhaustion requirement is to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance" by the employer. *Woodman*, 132 F.3d at 1342.  Thus, the exhaustion requirement seeks

to encourage timely reporting of alleged discriminatory acts in order to rid the workplace of discrimination.  If employees are required to report alleged discriminatory acts within forty-five days, they will be more likely to report such acts, even if they are unsure that they have been discriminated against, or whether the alleged acts are actionable.  In contrast, the Tenth Circuit's requirement that a plaintiff demonstrate an adverse employment action is a judicially created rule to limit the discrimination claims that the court will hear.

Consequently, the two requirements are distinct, and an employee is required to first contact an EEO Counselor, even if the alleged act of discrimination does not meet the requirements for a prima facie case of discrimination.  Only after determining that the claim has been properly exhausted does the court determine whether there has been an adverse employment action. *See Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) ("At the summary-judgment stage, *properly exhausted* Title VII claims are ordinarily analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." (emphasis added)).  Indeed, Section 1614.105(a) requires all persons who "*believe* they have been discriminated against" to consult a Counselor, a rather broad requirement that would appear to apply to even relatively minor acts that might not constitute a violation of Title VII themselves. 29 C.F.R. § 1614.105(a) (emphasis added).  For example, in a hostile work environment case, an isolated act of harassment or discrimination "may not be actionable on its own," but the "cumulative effect of individual acts" provides the cause of action. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  Still, the plaintiff in a hostile work environment case must comply with  applicable exhaustion requirements, even though the actual claim did not arise until some time after the initial act of discrimination, which was not actionable at the time it was committed, but was still subject to the forty-five day reporting requirement. *See*

*generally id.*

In determining whether Plaintiff met the forty-five day time limit for contacting an EEO Counselor, the Court must decide when to count the alleged discriminatory acts as having occurred—at the time Plaintiff failed the PTT, when Ms. Bradford was reassigned, or when Plaintiff was terminated.  Under the plain language of Section 1614.105(a), it would appear that Plaintiff was required to contact an EEO Counselor within forty-five days of having failed the test, even if he didn't suffer an adverse employment action at that time. *Accord Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3rd Cir.1994) (finding that the 45-day limitations period begins to run "when the plaintiff knows or reasonably should know that the discriminatory act has occurred"); *Hatcher-Capers v. Haley*, 773 F. Supp. 486, 488 (D.D.C. 1991) ("The plain language of the regulation provides that the . . . deadline for filing an administrative complaint depends on when the plaintiff knew or should have known of the discriminatory action or event.").  Therefore, regardless of whether Plaintiff suffered an adverse employment action at the time he failed the PTT, if he believed he had been discriminated against, he should have contacted an EEO Counselor when the act occurred.

Consequently, any claims that Plaintiff has with regard to the PTT itself, or that his firing was based upon his failure to pass the PTT in November 2003, should be dismissed because he was required to bring these claims to the attention of an EEO Counselor within forty-five days of having failed the test.[2]  Had Plaintiff taken and failed the test again in April 2005 before he was terminated,

---

2.  Defendant argues that "[b]ecause Plaintiff failed to exhaust his administrative remedies with regard to [the PTT], the Court lacks jurisdiction, and dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(1).  However, the Tenth Circuit has concluded that a failure to comply with the forty-five day exhaustion requirement is not a jurisdictional issue, but rather more akin to a statute of limitations. *See Sizova*, 282 F.3d at 1324–26; *Jones v. Runyon*, 91 F.3d 1398 n. 1 (10th Cir. 1996).  As a result, the Court should not dismiss for failure to exhaust administrative remedies under Rule 12(b)(1), but rather as a motion for summary judgment under Rule 56(c). *Beene*, 70 Fed. Appx. at 490.

he could have contacted an EEO Counselor and claimed that the test was discriminatory.  Instead, Plaintiff refused to retake that test and was dismissed, not based upon his previous failure, but based upon his unwillingness to comply with the requirements for special agent training.  As a result, Plaintiff's argument that he was not required to contact an EEO Counselor in November 2003 when the alleged discriminatory act occurred because he did not suffer an adverse employment action until one and a half years later must fail.

Yet, Plaintiff's claim in Count II that he was discriminated against because he was not given the same accommodations as Ms. Bradford is not barred by the forty-five day exhaustion requirement because the alleged discriminatory act was not his failure of the PTT, but his termination from the DEA on May 17, 2005, which he claims was motivated by gender bias.  As this claim is not barred by the exhaustion requirement, the Court must move on to the next step of its analysis and determine whether Plaintiff has established a prima facie case of gender discrimination.

Defendant argues that Plaintiff has failed to establish a prima facie case of discrimination and to show that Defendant's articulated, non-discriminatory reason for terminating him was pretextual.  "At the summary-judgment stage, properly exhausted Title VII claims are ordinarily analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." *Mathirampuzha*, 548 F.3d at 78; *see also Pastran v. K-Mart Corporation*, 210 F.3d 1201, 1205 (10th Cir. 2000) ("claims under Title VII are subject to the burden-shifting analysis of *McDonnel Douglas*").  "The plaintiff bears the initial burden of establishing a prima facie case of discrimination." *Pastran*, 210 F.3d at 1260; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 520, 506 (1993) (finding that, at trial, the Plaintiff must establish by a "preponderance of the evidence" a prima facie case of discrimination (citing *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981))); *Cole*, 43 F.3d at 1379.

16

To establish a prima facie case of gender discrimination, Plaintiff must show: (1) that he belonged to the protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that he was treated less favorably than his similarly situated female counterparts. *See St. Mary's Honor Ctr.*, 509 U.S. at 506; *Cole*, 43 F.3d at 1380 (gender); *Sanchez*, 164 F.3d at 531 (disability); *Thomas*, 111 F.3d at 1510 (race).

Once the plaintiff establishes a prima facie case of discrimination, then "the defendant can rebut the presumption of discrimination by producing some evidence that it had legitimate, nondiscriminatory reasons for its action." *Cole*, 43 F.3d at 1379.  If the defendant can meet this burden of production, then the "plaintiff must show by a preponderance of the evidence that the legitimate reasons offered by the defendant were a pretext *for discrimination*." *Id*. at 1379 (citing *EEOC v. Flasher Co.*, 986 F.2d 1312, 1321 (10th Cir. 1992)) (emphasis in original).  "A plaintiff may demonstrate pretext by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Pastran*, 210 F.3d at 1260 (quoting *Bullington v. United Airlines, Inc.*, 186 F.3d 1301, 1317 (10th Cir. 1999)).

In the case at hand, plaintiff has alleged (1) that he is a male, (2) that he was terminated from his employment with the DEA, (3) that he was qualified to perform the responsibilities of a DEA Special Agent, and (4) that he was treated less favorably than Tasha Bradford, a similarly situated female employee with the DEA who was granted a position in the DEA Diversion Program.  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 324.

Defendant asserts that Plaintiff was not treated differently than Ms. Bradford: Ms. Bradford's termination was proposed on April 27, 2004 based on "medical inability," the same reason listed in Plaintiff's termination letter.  Furthermore, like Plaintiff, Ms. Bradford suffered a knee injury during the PTT, failed the test, and was recycled.  She then refused to undergo the knee surgery that was recommended by the DEA so that she could retake the PTT and continue on with her training.  As a result, she was terminated.  Prior to her termination, however, Ms. Bradford applied for the position of Diversion Investigator with the DEA, for which she was not required to take the PTT.

Plaintiff asserts, however, that he was treated less favorably than Ms. Bradford because he was not allowed to apply for other jobs within the agency and that, when he requested to do so, he was told that his only option was to pass the PTT.  Plaintiff has produced scant evidence to support these allegations.  Plaintiff contends that he talked with Mr. Kaczmarek (Group Supervisor of Group II in the Albuquerque, New Mexico DEA office) in March 2005 about applying for a position as Diversion Investigator, and that Mr. Kaczmarek told him to wait until he received a final decision on his termination letter before applying for another position. (Doc. 36-11.)  Mr. Kaczmarek admits to having discussed with Plaintiff "the possibility of applying for a Diversion Investigator position or an Intelligence Research Specialist position on several occasions," but that Plaintiff was only interested in becoming a Special Agent due to his past experience in law enforcement. (Doc. 33-19.)  Additionally, Plaintiff alleges that he decided to apply for the Diversion and Investigative Analyst positions despite Mr. Kaczmarek's advice and spoke to DEA headquarters about this, but was informed that he was not allowed to apply for another position because he had "an active proposed termination action pending." (Doc. 36-11.)  In brief, Plaintiff has provided nothing beyond his own statements to corroborate these assertions.

Still, Plaintiff argues that summary judgment is inappropriate here because his assertions

create a genuine issue of material fact as to whether Plaintiff ever requested he be allowed to apply for another job.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Plaintiff has not met his burden; his only evidence that he was treated any differently than Ms. Bradford is his own assertion that he was prohibited by the DEA from applying for a different position.  "Mere conjecture" on the part of Plaintiff is an insufficient basis to deny Defendant's motion for summary judgment. *Jones v. Denver Post Corp.*, 203 F.3d 748, 754 (10th Cir. 2000) (quoting *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1491 (10th Cir. 1995)).  On a motion for summary judgment, the Plaintiff is required to go beyond his pleadings and present "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Furthermore, even assuming that Plaintiff could establish a prima facie case of gender discrimination, he would still have to show that Defendant's articulated, non-discriminatory reason for terminating him was pretextual. *Jones*, 203 F.3d at 756 ("To survive summary judgment, [Plaintiff] must demonstrate that 'there is a genuine dispute of material facts as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief.'" (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995))); *Cole*, 43 F.3d at 1379.  "A plaintiff may demonstrate pretext by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Pastran*, 210 F.3d at 1260 (quoting *Bullington*, 186 F.3d at 1317.  Plaintiff was dismissed based on medical inability—his

19

unwillingness to retake the PTT after more than a year of rehabilitation and his ultimate failure to comply with the physical requirements for special agent training. Plaintiff has produced no evidence indicating that these proffered reasons for his dismissal were pretextual.

Defendant, in contrast, has offered several documents indicating that Plaintiff was given more than a year to recover from his injury and retake the PTT, that he was cleared for active duty by his own physician in February 2005, and that he then refused to retake the PTT. Additionally, passing the PTT appears to be a reasonable physical requirement for candidates wishing to pursue special agent training. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 430 (1971) ("Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. . . . What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification."). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Plaintiff has failed to establish a genuine issue of material fact as to whether the DEA's proffered reason for the challenged action is pretextual, and therefore, the Court must grant Defendant's motion for summary judgment with regard to Count II.

C.     **National Origin Discrimination Claim**

In Count III, Defendant asserts that he was discriminated against on the basis of national origin. In his Response, however, Plaintiff conceded that there was inadequate evidence to support a claim of racial discrimination and did not object to an entry of partial summary judgment. The Court will therefore grant Defendant's motion for summary judgment with regard to Count III.

## V.      CONCLUSION

On Count I, discrimination based on disability, Plaintiff failed to present evidence sufficient to establish that there is a genuine issue of material fact with regard to whether Plaintiff is disabled under the ADA.

On Count II, discrimination based on gender, Plaintiff's claim that his firing was based upon his failure to pass the PTT in November 2003 must be dismissed because he failed to bring his claim that the PTT is gender-biased to the attention of an EEO Counselor within forty-five days of having failed the test.  Plaintiff's claim that he was not given the same accommodations as Ms. Bradford must also be dismissed because Plaintiff failed to establish a prima facie case of gender discrimination and to establish a genuine issue of material fact as to whether the DEA's proffered reason for his dismissal was pretextual.

On Count III, discrimination based on national origin, Plaintiff conceded that there is inadequate evidence to support a claim of racial discrimination.

**WHEREFORE**, having reviewed the parties' arguments and considered the pleadings, affidavits, depositions, answers to interrogatories, and other documents submitted by the parties, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment.

**ROBERT C. BRACK**
**U.S. DISTRICT COURT JUDGE**